**Bun MONTGOMERY, Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Appellee.**

No. 95–1387.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1995.

Decided Nov. 2, 1995.

John August Bowman, Davenport, Iowa, argued for appellant.

Ana Maria Martel, Asst. Atty. Gen., Cedar Rapids, Iowa, argued for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and HANSEN, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

In this Social Security case, Bun Montgomery appeals the denial of his claim for disability benefits. The Administrative Law Judge concluded that Montgomery could not return to his past work, but that he has the residual functional capacity to perform other work. The Commissioner, however, failed to identify jobs within the economy which Montgomery could perform. Therefore, we reverse and remand.

## I.

Bun Montgomery applied for disability insurance benefits in April of 1990, claiming disability based on congestive heart failure and irritable bowel disease. Montgomery's claim was initially denied, and a hearing before an ALJ ensued. At the time of the hearing, Montgomery was 48 years old and a high school graduate, and had attended college for two years. He had worked in the past as a machine designer, a manufacturing engineer, a contractor, and a manufacturing engineer/manager.

Following the five-step analysis prescribed by the regulations, 20 C.F.R. § 404.1520, the ALJ concluded that Montgomery has severe coronary artery disease (postoperative status), and that his impairments prevent him from returning to his past work. The ALJ, however, stated that Montgomery retains the residual functional capacity

> to perform the requirements of work except for lifting of more than 15 pounds at a time maximum, walking farther than three blocks at a time, exposure to extremes of heat and humidity, work which does not allow for position changes every 60 minutes, work which would not allow for three to four bathroom breaks daily, work which involves detailed or complex tasks, or work which involves stress at a level greater than 5 (on a progressive scale of 1 to 10). . . .

The ALJ then turned to a Vocational Expert (VE) for a listing of jobs available in the national and regional economy which are compatible with Montgomery's residual functional capacity. After consulting the *Dictionary of Occupational Titles*, the VE testified that Montgomery could perform low-stress

sedentary[1] work as a Cashier II, a Charge Account Clerk, and an Order Clerk. Relying on the VE's testimony, the ALJ concluded that there were jobs in the economy which Montgomery could perform, and denied Montgomery's disability claim. The Commissioner adopted the ALJ's ruling as her final decision, and the District Court affirmed. Montgomery now appeals. On appeal, we affirm the District Court if the ALJ's decision is supported by substantial evidence on the record as a whole. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995).

## II.

■ As an initial matter, Montgomery claims that the ALJ failed to consider all the evidence when determining whether he retained any residual functional capacity despite his impairments. Specifically, Montgomery maintains that sufficient weight was not given to the fact that he was receiving disability payments from his employer's insurance carrier. This argument has no merit. Montgomery has produced no evidence which indicates that the carrier's decision to pay him disability benefits is relevant to his Social Security disability claim. See *Jelinek v. Bowen*, 870 F.2d 457 (8th Cir.1989) (discussing when independent disability determination is relevant to resolution of disability claim). Moreover, the fact that the carrier's decision to award benefits may support Montgomery's Social Security claim is not a basis for reversal. In appropriate cases, such a decision is only one piece of evidence to consider. Here, the ALJ did not mention the insurance disability decision in his opinion, but this does not mean he did not consider it.

## III.

Montgomery also challenges the ALJ's hypothetical to the VE on two grounds. First, he claims that the hypothetical question posed to the VE was flawed because it failed to encompass all of his impairments. The record before us belies this claim. The hypothetical posed to the VE included all of Montgomery's impairments which the ALJ concluded were credible. See *Chamberlain v. Shalala*, 47 F.3d 1489, 1495 (8th Cir.1995).

■ Second, Montgomery challenges the ALJ's use of a stress scale with a range of one to ten when posing the hypothetical to the VE. According to Montgomery, the ALJ had no basis for using the stress scale, or for attaching a five to the level of stress he could endure. The use of a stress scale, however, is an acceptable shorthand for identifying a claimant's stress tolerance. See generally *Mitchell v. Sullivan*, 925 F.2d 247 (8th Cir. 1991) (stress scale relevant when stress determination supported by the evidence). In this case, the psychological report and the psychiatric report support the ALJ's conclusion that Montgomery does not suffer from a mental disorder which would preclude work. The psychiatric report also supports the ALJ's conclusion that on a scale of one to ten, Montgomery could endure a moderate level of stress. See generally *Morse v. Shalala*, 16 F.3d 865, 874 (8th Cir.1994) (subsequent history omitted) (stress determination must be supported by evidence of claimant's psychological condition). We think that "five" is an acceptable numerical equivalent of "moderate."

## IV.

■ Having concluded that the ALJ's hypothetical was not flawed, we turn to the question of whether the Commissioner carried her burden of demonstrating that jobs existed in the economy which Montgomery could perform. See *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir.1995). Montgomery claims that the VE's testimony conflicted with the *Dictionary of Occupational Titles*, and therefore that the Commissioner has not met her burden. We agree.

The ALJ asked the VE to assume, *inter alia*, that Montgomery could lift 15 pounds maximum and endure stress at a level no greater than 5 on a progressive scale of 1 to

---

1. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.... Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

10. The ALJ also asked the VE to consider Montgomery's age, education, and past work experience. In response, the VE confirmed the ALJ's assumption that Montgomery could not return to his past work, but indicated that Montgomery could perform sedentary, unskilled [2] work. He cited the following jobs listed in the *Dictionary of Occupational Titles*: Cashier II, DOT # 211.462–010; [3] Charge Account Clerk, DOT # 205.367–014; and Order Clerk, DOT # 209.667–014. [4]

None of these positions is compatible with Montgomery's abilities as set forth in the ALJ's hypothetical. The Cashier II position is classified as light [5] work, which requires the ability to lift 20 pounds. The ALJ concluded that Montgomery was capable of lifting only 15 pounds, which is the benchmark for sedentary work.

The remaining positions, Charge Account Clerk and Order Clerk, are, in fact, sedentary in nature. The VE testified, however, that the position of Sales Clerk, a position similar to Charge Account Clerk and Order Clerk, typically has a stress level of six on a scale of one to ten. The VE noted that "sales clerks, cashiers and people doing promotional work on the telephones can be sub-jected to a fair amount of stress because they are dealing with people...." The job descriptions of a Charge Account Clerk [6] and Order Clerk [7] indicate that these jobs would also necessitate "dealing with people" on a fairly consistent basis. There is no evidence that they would be less stressful than the job of Sales Clerk. Given the VE's testimony and the DOT job descriptions of Charge Account Clerk and Order Clerk, it is not clear that those positions would have a stress level less than six. Yet the ALJ concluded that Montgomery could perform work at a stress level no higher than five.

■ The VE's testimony that Montgomery could be employed in any of these three positions given his lifting and stress limitations conflicts with the *Dictionary of Occupational Titles*. Generally, when expert testimony conflicts with the DOT, it is the DOT which controls. *Smith v. Shalala*, 46 F.3d at 47. The DOT classifications may be rebutted, however, with VE testimony which shows that "particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995).

2. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength...." 20 C.F.R. § 404.1568(a).

3. The Commissioner states that the VE also cited the position of Cashier I. A review of the record indicates that the VE did mention the position of "cashier" but did not give its DOT number. Even if he was referring to the position of Cashier I, which is sedentary work, this testimony does not support the ALJ's decision. The VE specifically testified that the position of cashier would require a stress tolerance of six or more.

4. We note that the position of Order Clerk does not correspond with the DOT number, 209.667–014, given by the VE. This DOT number corresponds with the position of Order Caller, which is classified as light work. Perhaps the VE made an inadvertent mistake, as the government argues. This is a matter which can be clarified on remand.

5. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

6. A Charge Account Clerk

[i]nterviews customers applying for charge accounts: Confers with customer to explain type of charge plans available. Assists customer in filling out application or completes application for customer. Reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and notify customer of acceptance or rejection of credit.... May verify entries and correct errors on charge accounts ..., using adding machine. May answer credit rating requests from banks and credit bureaus. May issue temporary shopping slip when credit references appear satisfactory.
*Dictionary of Occupational Titles* 205.367–014.

7. An Order Clerk, Food and Beverage

[t]akes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service....
*Dictionary of Occupational Titles* 209.567–014.

In this case, the DOT's classification of the jobs cited by the VE indicates that none of the three positions is compatible with Montgomery's ability. The VE did not testify that the job traits of the positions identified varied from the way the DOT described them.

■ The VE's task "is to determine whether jobs exist for someone with the claimant's *precise* disabilities." *Jelinek*, 870 F.2d at 459. He failed to accomplish that task in this case, and the Commissioner may not rely on his testimony. As a consequence, the Commissioner has not met her burden of demonstrating that jobs exist in the economy which Montgomery is capable of performing. We therefore reverse and remand to the District Court with directions that the case be remanded to the Commissioner for reconsideration consistent with this opinion.

HANSEN, Circuit Judge, dissenting.

I respectfully dissent from Part IV of our court's opinion. I believe that substantial evidence in the record as a whole supports the ALJ's finding that Montgomery could work as a Charge–Account Clerk, a job that exists in significant numbers in the economy.

The position of Charge–Account Clerk is classified as sedentary. The VE's statement that Montgomery could not perform the work of a Sales Clerk, which involves promotional work and a "fair amount of stress," does not necessarily translate to the conclusion the court makes that he cannot perform the Charge–Account Clerk position. I agree that, like the Sales Clerk position, the Charge–Account position involves working with people—but in a different capacity and a different context. In fact, the VE testified that the position of Charge–Account Clerk would fit a stress level of five while he put Sales Clerk commonly at a level six, which is beyond Montgomery's level five capability.

I would affirm the judgment of the district court.