**Michael W. BERRY, Plaintiff,**

v.

**John J. CALLAHAN, Ph.D.[1] Acting Commissioner of Social Security, Defendant.**

**No. CIV. 3–96–CV–10191.**

United States District Court, S.D. Iowa, Davenport Division.

Aug. 4, 1997.

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan is hereby substituted for Shirley S. Chater, as the defendant in this action.

Michael Depree, Bowman & Depree, Davenport, IA, for Plaintiff.

Inga Bumbary–Langston, Asst. U.S. Atty., Des Moines, IA, for Defendant.

## ORDER

LONGSTAFF, District Judge.

Plaintiff seeks review of the Commissioner of Health and Human Services' decision denying him Supplemental Security Income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff Michael Berry, age 36 on the date of the hearing, applied for SSI on September 23, 1993, alleging disability since September 2, 1992. He was denied benefits and a reconsideration of that decision. A hearing was held on March 9, 1995 before an administrative law judge ("ALJ"). In a written decision dated August 25, 1995, the ALJ found plaintiff was not under a disability as defined by the Act, and denied his application. On November 13, 1996, after considering additional evidence, the Appeals Council of the Social Security Administration denied plaintiff's request for review. The decision of the ALJ thus stands as the final decision of the Commissioner. This action for judicial review was commenced December 11, 1996.

## II. FINDINGS OF THE COMMISSIONER

The ALJ found the medical evidence to establish that plaintiff suffers from:

hypertension, obesity, low back pain, status post open reduction internal fixation of the left ankle, degenerative joint disease and related pain in the left ankle, and a medically determinable impairment resulting in complaints of pain in the lower back,

but that he "does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." Tr. 34.

The ALJ determined that plaintiff's testimony concerning the severity and intensity of his symptoms was not fully credible. Tr. 35. The ALJ further found plaintiff has the residual functional capacity:

to perform the physical exertion and non-exertional requirements of work except for lifting more than 25 to 30 pounds occasionally or 10 to 15 pounds frequently. He cannot stand or walk more than 1 to 2 hours at a time. He cannot do any repetitive stooping, kneeling, crawling, or climbing, and cannot work around heights.

Tr. 35. The ALJ found that plaintiff's impairments prevented him from returning to his past relevant work as an unskilled laborer (Tr. 27), but that a significant number of

other jobs exist in the national economy that plaintiff is able to perform. Tr. 36. These jobs include: short order cook, pantry goods assembler, and cable maker. Tr. 36. The ALJ therefore concluded plaintiff was not disabled under the meaning of the Act. Tr. 36.

III. APPLICABLE LAW AND DISCUSSION

■ A court must affirm the decision of the Commissioner if substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Johnson v. Chater,* 108 F.3d 942, 943 (8th Cir.1997). A court may not reverse merely because substantial evidence would have supported an opposite decision. *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Mapes v. Chater,* 82 F.3d 259, 260 (8th Cir.1996).

A. Whether ALJ Improperly Discredited Plaintiff's Hearing Testimony

■ Plaintiff first contends the ALJ improperly discredited his assertions that he could walk only up to 6 blocks, and stand up to 20 minutes. Tr. 32. The Court notes that no physician in the record has prescribed such limitations. *See Brown v. Chater,* 87 F.3d 963, 965 (8th Cir.1996) (ALJ's decision denying benefits was supported by lack of significant restrictions imposed by treating physicians). Although J.L. Marsh, M.D., an orthopedist who examined plaintiff in October, 1994, indicated plaintiff "will certainly have difficulties with his ankle arthritis for most likely the rest of his life," (Tr. 259), Dr. Marsh did not suggest plaintiff is limited to the degree alleged by plaintiff. The same is true regarding plaintiff's back pain. As noted by the ALJ, plaintiff's last visit to a physician due to low back pain was in October, 1993. *See* Tr. 214. During the disabili-

ty evaluation performed by D.K. Mokhtar, D.O., in February, 1994, he indicated his back pain amounted to merely a "dull ache," aggravated only by *"prolonged* walking, standing, bending, stooping, and lifting." Tr. 226. (emphasis added). This limitation was appropriately reflected in the ALJ's residual functional capacity. Tr. 35.

■ Granted, a lack of objective medical evidence is only one factor for the ALJ to consider. The ALJ must also give full consideration to all information regarding plaintiff's subjective complaints, including "the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984).

■ The Commissioner may discount subjective complaints of pain when they are inconsistent with the record as a whole. *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993). The ultimate issue is not whether plaintiff experiences pain, but whether his subjective complaints of pain are credible to the extent that the pain is disabling. *See Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993); *Pickner v. Sullivan,* 985 F.2d 401, 404 (8th Cir.1993).

The Court finds the ALJ appropriately analyzed the criteria set forth in *Polaski,* and discounted plaintiff's subjective complaints. As noted by the ALJ, plaintiff testified during the hearing he is able to get his roommate's children off to school, dishes and perform other light housework, grocery shop, baby-sit and get the children afternoon snacks, visit friends, help his roommate with homework, and go fishing. Tr. 74–76. There is no evidence plaintiff experiences *serious* side effects from his current medications.[2] Tr. 69 The fact the ALJ "did not explicitly discuss each *Polaski* factor in a

---

2. Plaintiff testified that the medication Naprosyn upsets his stomach, but that he took the medi-

cation Pepcid to counteract this side effect. Tr. 68–69.

methodical fashion" is not necessarily fatal to his opinion. *Brown v. Chater,* 87 F.3d 963, 966 (8th Cir.1996).

In summary, while plaintiff's asserted limitations might support disability status if accepted as credible, "[this Court] will not substitute [it's] opinion for that of the ALJ, who was in a better position to assess [plaintiff's] credibility." *Brown v. Chater,* 87 F.3d 963, 965 (8th Cir.1996) *(citing Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993)).

Alternatively, plaintiff contends there is a "logical inconsistency" in the ALJ's opinion based on the fact the ALJ wrote in his opinion: "While the claimant's ankle pain and resulting limitations are well documented and credible ..." (Tr. 32), yet proceeded to disregard plaintiff's stated walking and standing limitations. Plaintiff has taken the ALJ's statement out of context, however. The ALJ agrees plaintiff's ankle injury has resulted in some limitations, and that he experiences low back pain. *See* Tr. 32. ("No one doubts the claimant experiences some pain and discomfort.") What the ALJ disputes is simply the *severity* of those limitations. As outlined above, the Court finds the ALJ appropriately discounted plaintiff's subjective complaints following the framework set forth in *Polaski v. Heckler,* 739 F.2d at 1322. *See also McGinnis v. Chater,* 74 F.3d 873, 875 (8th Cir.1996) (although ALJ's statement that claimant's "functional limitations were 'essentially credible' was ambiguous," ALJ appropriately discounted subjective complaints elsewhere in opinion).

**B. Whether Vocational Expert Testimony Constituted Substantial Evidence Upon Which to Base the ALJ'S Decision**

**1. Plaintiff's Standing Limitations**

■ Plaintiff also contends the ALJ should not have asked the vocational expert to assume plaintiff could stand for up to two hours at a time. Again, the Court disagrees. The ALJ's hypothetical question asked the vocational expert to assume, among other things, that plaintiff should not stand or walk more than 1 to 2 hours at a time. Tr. 80. This limitation is entirely consistent with the opinion of Dr. Mokhtar, a consulting physician who personally examined plaintiff. Specifically, Dr. Mokhtar opined that plaintiff "should alternate every 1 to 2 hours with standing, walking and unlimited [ ] sitting in an eight hour shift." Tr. 229. No other medical evidence in the record suggests plaintiff must stand for less than 1 hour at a time. Dr. Marsh stated simply that plaintiff should "modify his activities with regards to impact loading activities and exercises." Tr. 259.

■ "Hypothetical questions posed to the vocational expert 'need only include those impairments that the ALJ accepts as true.'" *Johnson v. Chater,* 108 F.3d 178, 180 (8th Cir., 1997) *(quoting Haynes v. Shalala,* 26 F.3d 812, 814–15 (8th Cir.1994)); *see also House v. Shalala,* 34 F.3d 691, 694 (8th Cir. 1994). In the present case, it was within the discretion of the ALJ to base his hypothetical question on limitations he found credible and supported by the medical evidence.

**2. Whether Jobs Listed by Vocational Expert are Within Plaintiff's Exertional Limitations**

Finally, plaintiff argues that the three jobs listed by the vocational expert as falling within plaintiff's capabilities in fact are listed in the *Dictionary of Occupational Titles,* (*DOT*) as requiring plaintiff to walk and stand more than is feasible. Plaintiff also asserts that the third job, that of short order cook, was given the wrong *DOT* code by the vocational expert.

■ As noted by the Commissioner, the fact the vocational expert misidentified the job of short order cook is not a critical mistake. The job of short order cook does appear in the *DOT* under # 313.374–014.

■ The Court likewise does not agree with plaintiff's argument that all three sample jobs listed by the ALJ—short order cook, pantry goods maker, and cable maker—require too much walking and standing. The Eighth Circuit has repeatedly held that *DOT* definitions for particular occupations "represent[ ] the 'approximate maximum requirements for each position, rather than [the] range.'" *Carlson v. Chater,* 74 F.3d 869, 871

(8th Cir.1996) (*quoting Jones v. Chater*, 72 F.3d 81, 82 (8th Cir.1995)). Although the vocational expert in the present case may not have *expressly* stated that the three jobs listed would accommodate the limitations posed in the hypothetical, it is clear from the record that the vocational expert considered these limitations in identifying the particular occupations.[3] The Court finds substantial evidence supports the finding that plaintiff could perform the three jobs listed by the vocational expert. *See also Misner v. Chater*, 79 F.3d 745, 746 (8th Cir.1996) ("VE acknowledged that a person with [claimant's] residual functional capacity would not be capable of performing all jobs categorized as light work but would be capable of performing some light jobs, including....")

## IV. CONCLUSION

For the foregoing reasons,

The Commissioner's decision is supported by substantial evidence in the record as a whole and is therefore affirmed.

IT IS SO ORDERED.

---

3. The relevant dialogue between the ALJ and vocational expert is as follows:
   Q. Would [plaintiff] have any skills acquired from his past work which he should be expected to transfer to other work within the national economy?
   A. Yes. There are skills present.
   Q. And could they be transferred to other work within the economy?
   A. Yes. There's other jobs within the economy to which those skills could be transferred that would be within the hypothetical. *A question—on the standing and walking in the hypothetical, is that one to two hours at a time?*
   Q. *Yes.*
   A. *At a time, Okay.* Those skills would be a cook, short order, *DOT* 313.671–010. This is a cook that would prepare food requiring a short preparation time. The state has about 5,300 of those jobs, in the nation about 499,-000. The next job was in the pantry goods area. This would be in food preparation, as well. Pantry goods maker, *DOT* 317.684–014. There are over 16,000 of those jobs in the state and about 1,400,000 in the nation. Cable maker is an example in electrical equipment. This would be *electrical equip*ment assembly, doing things with electrical types of articles and so on. That's *DOT* 728.684–010. *All those would be in the light category, would be low level, semiskilled positions....*
   Tr. 81–82 (emphasis added).