# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2329
_____

James Cuthrell

*Plaintiff - Appellant*

v.

Michael J. Astrue, Social Security Commissioner

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: December 13, 2012
Filed: January 10, 2013

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

James Thomas Cuthrell was denied disability benefits. The district court upheld the denial. He appeals, arguing that the Administrative Law Judge failed to use the psychiatric review technique, did not consider important medical evidence, and applied the incorrect standard to evaluate his residual functional capacity. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

# I.

Cuthrell was in a motorcycle accident in 1973 and a car accident six years later. He suffered several complications including a head injury and his right leg being slightly shorter than the left. Beginning in 2002, Cuthrell saw a number of doctors, complaining of various ailments. In July 2006, he applied for disability from the Social Security Administration, with an alleged onset date of July 1, 2006. An ALJ denied that application in November 2008. Cuthrell did not appeal.

In November 2008, Cuthrell filed a new disability application, allegedly beginning January 1, 2008. A therapist he saw in 2009 concluded that he was unable to perform many normal work functions on a continuous basis and could rarely lift 15 pounds. At the hearing, Cuthrell testified he had recently cut his work to 25 hours per week, because that was all he could manage. He also testified about his habits at work, admitting that he could lift 20 pounds and had lifted even heavier objects at work. A vocational expert testified about a hypothetical individual of Cuthrell's age and experience, who could lift 50 pounds occasionally and 25 pounds frequently, and could not work on ladders or scaffolds. The expert concluded that this individual could perform several occupations, including Cuthrell's current and past work.

The ALJ found that Cuthrell had two severe impairments: "a history of injury to the right leg and of a closed head injury." The ALJ found that the therapist's conclusions were contradicted by Cuthrell's admissions, and that based on the functions he actually performed at work, Cuthrell was not credible as to the description of his injuries, due to his conflicting testimony. The ALJ found Cuthrell not disabled and denied benefits. He appealed to the district court, which upheld the ALJ's decision.

II.

This court reviews de novo a district court's decision upholding a denial of Social Security benefits. ***McCoy v. Astrue***, 648 F.3d 605, 610-11 (8th Cir. 2011). The review of the underlying ALJ decision is under a deferential "substantial evidence" standard, and this court affirms if "a reasonable mind could accept the ALJ's decision." ***Id.*** at 611, *citing **Juszczyk v. Astrue***, 542 F.3d 626, 631 (8th Cir. 2008). This court must consider evidence that supports and detracts from the ALJ's decision. ***Perkins v. Astrue***, 648 F.3d 892, 897 (8th Cir. 2011). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." ***Id.***, *quoting **Medhaug v. Astrue***, 578 F.3d 805, 813 (8th Cir. 2009). This court reviews de novo the ALJ's legal conclusions, including those about proper procedure. ***Carlson v. Astrue***, 604 F.3d 589, 592 (8th Cir. 2010); ***Brueggemann v. Barnhart***, 348 F.3d 689, 692 (8th Cir. 2003).

Cuthrell argues that the ALJ was required to perform the psychiatric review technique, and failed to do so. The parties agree that the ALJ did not perform the PRT. The issue is whether it was required.

Every application for disability is evaluated under the five-step "sequential evaluation process." *See* **20 C.F.R. §§ 404.1520(a)**; **416.920(a)**. Step one determines whether the claimant is involved in substantial gainful activity. **§§ 404.1520(a)(4)(i)**, **(b)**; **416.920(a)(4)(i)**, **(b)**. If so, the claimant is not disabled; if not, step two determines whether the claimant has a "severe" medically determinable impairment (or combination of impairments). **§§ 404.1520(a)(4)(ii)**, **(c)**; **416.920(a)(4)(ii)**, **(c)**. If there is no severe impairment, the claimant is not disabled; if there is, step three determines whether the impairments are severe enough to meet a predetermined list of conditions (with duration requirements). **§§ 404.1520(a)(4)(iii)**, **(d)**; **416.920(a)(4)(iii)**, **(d)**. If so, the claimant is disabled; if not, step four considers the

residual functional capacity of the claimant – previously determined by the ALJ – and evaluates whether the claimant has the residual functional capacity to complete his or her past relevant work. **§§ 404.1520(a)(4)(iv)**, **(f)**; **416.920(a)(4)(iv)**, **(f)**. If the claimant can complete past relevant work, the claimant is not disabled; if not, step five considers the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant can do other work. **§§ 404.1520(a)(4)(v)**, **(g)**; **416.920(a)(4)(v)**, **(g)**. If so, the claimant is not disabled; if not, the claimant is disabled.

An additional "special technique" (the PRT) is required in evaluating "mental impairments." **20 C.F.R. §§ 404.1520a(a)**; **416.920a(a)**. When mental impairments are present, the PRT is mandatory. *Id.* ("[W]hen we evaluate the severity of mental impairments . . . we must follow a special technique at each level in the administrative review process."); *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007). The PRT must be documented in the ALJ's written decision, including the findings and conclusions based on the PRT. **§§ 404.1520a(e)(4)**; **416.920a(e)(4)**.

The Commissioner asserts that the PRT is not required here, because Cuthrell's injury was not a mental impairment. At step two, the ALJ made this finding: "The claimant has the following severe impairments: a history of injury to the right leg and of a closed head injury." In his seven-sentence explanation of the evidence supporting that finding, the ALJ stated, "Frank S. Gersh, Ph.D., concluded after his examination of the claimant in March and April 2007 that he had dementia due to a closed head injury with impaired memory, concentration and motor function and a mood disorder." *See Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007) ("[T]he ALJ may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms."), *citing Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005).

As the Regulations do not define "mental impairment," the Commissioner's Listing of Impairments assists in classifying injuries. *See* **20 C.F.R. pt. 404, subpart P, app. 1**.[1]  The Commissioner is correct that neurological impairments are distinct from mental impairments. *Compare* ***id.* § 11.00** ("Neurological"), *with* **§ 12.00** ("Mental Disorders").  The term "closed head injury" does not appear in the Listing. The closest listing, "traumatic brain injury," is in the Neurological Listing. ***Id.* § 11.00(F)**.  The listing indicates that traumatic brain injury "may result in neurological and mental impairments," and prescribes the use of § 11.18 ("Cerebral Trauma") for direction.  The listing for cerebral trauma has one line: "Evaluate under the provisions of 11.02, 11.03, 11.04, and 12.02, as applicable." ***Id.* § 11.18**.  Thus, cerebral trauma, or traumatic brain injury, can be either neurological (11.02, 11.03, 11.04), mental (12.02), or both.

Because traumatic brain injury can result in mental impairments, this court looks to § 12.02 ("Organic Mental Disorders") for the symptoms characteristic of these impairments.  Listed there, *inter alia*, is "Memory impairment, either short-term . . . , intermediate, or long-term," ***id.* § 12.02(A)(2)**; "Disturbance in mood," **§ 12.02(A)(5)**; and "Marked difficulties in maintaining concentration, persistence, or pace," **§ 12.02(B)(3)**.  These descriptions are nearly identical to the ALJ's recitation of Dr. Gersh's findings that Cuthrell had "dementia due to a closed head injury with *impaired memory*, *concentration* and motor function and a *mood disorder*." (emphasis added).  Based on the Listing and the ALJ's findings, this court concludes that Cuthrell suffered from a severe mental impairment.

---

[1]The Listing is typically used in step three of the sequential evaluation process to determine whether an injury is severe enough to deem a claimant disabled without considering the residual functional capacity. **20 C.F.R. §§ 404.1520(a)(4)(iii)**, **(d)**; **416.920(a)(4)(iii)**, **(d)**.  Here, the Listing is used only to indicate what injuries may qualify as mental impairments.

The Commissioner contends – as the district court ruled – that the ALJ's finding that Cuthrell was not credible eliminated the need for the PRT. The ALJ's credibility finding came in step four, evaluating whether Cuthrell had the residual functional capacity to complete his past relevant work. The duty to perform the PRT, however, was triggered much earlier – in step two – when the ALJ found a severe mental impairment. Further, the ALJ found Cuthrell to be not credible only "to the extent . . . inconsistent with the . . . residual functional capacity assessment." The credibility determination impacted only the testimony inconsistent with the residual functional capacity and did not disturb the ALJ's finding of a severe impairment.

The Commissioner additionally argues that the credibility assessment is relevant because the PRT would be impacted by credibility as well. The PRT regulation states: "Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)." **20 C.F.R. §§ 404.1520a(b)(1)**; **416.920a(b)(1)**. That process, however, occurs after the PRT has already begun, which at least triggers the PRT's documentation requirements. *See* **§§ 404.1520a(e)**; **416.920a(e)**. In this case, the ALJ did not complete any part of the PRT, which was error.

Although failure to complete the PRT may itself be reversible error, this court has left the door open to harmless-error analysis. *See Montgomery v. Shalala*, 30 F.3d 98, 100 (8th Cir. 1994). This court has found harmless error where there is no credible evidence of a severe mental impairment. *Nielson v. Barnhart*, 88 F. Appx. 145, 147 (8th Cir. 2004) (per curiam) (no evidence of mental impairment, and ALJ made a finding that any alleged depression was not severe); *Cakora v. Barnhart*, 67 F. Appx. 983, 985 (8th Cir. 2003) (per curiam) (no sufficient evidence that the impairment was severe); *Fountain v. R.R. Retirement Bd.*, 88 F.3d 528, 532 (8th Cir. 1996) (no credible evidence of a medically determinable mental impairment). Here, the ALJ specifically found that Cuthrell has the severe impairment of a closed-head

injury, with symptoms that are (as discussed) mental in nature. Given that finding, the ALJ's failure to complete the PRT is not harmless.

### III.

Cuthrell argues that the ALJ erred in the evaluation of the medical evidence and applied the incorrect standard in evaluating his residual functional capacity.

The PRT is used when evaluating the "severity of mental impairments." **20 C.F.R. §§ 404.1520a(a)**; **416.920a(a)**. All relevant medical evidence must be considered to determine the residual functional capacity. **§§ 404.1520(e)**; **416.920(e)**; **404.1545(a)(3)**; **416.945(a)(3)**. On remand, the ALJ will reevaluate its findings in light of the PRT. *See also* **§§ 404.1520a(e)(4)**; **416.920a(e)(4)**. Thus, this court need not address Cuthrell's arguments about the evaluation of evidence and his residual functional capacity.

\* \* \* \* \* \* \*

The judgment of the district court is reversed. The case is remanded to the district court with instructions to remand to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.

_____